Good afternoon. Welcome. We are here convening this afternoon to hear an oral argument in two cases. The first of those is United States of America v. Jomar Ivory, case number 22-29-97. Counsel for Appellant, would you like to reserve any time for rebuttal? Yes, Your Honor. Three minutes, please. Jason Ullman on behalf of Mr. Jomar Ivory and with the audience are four outstanding summer law clerks from my office. Thank you for introducing them. Not everyone does that. I appreciate that. Thank you, Your Honor. So propensity evidence, it has no place in criminal trials and that rule has been with us since 1695 in an act of British Parliament. And an ancillary problem that comes with that rule is what other acts can fairly be called intrinsic to the charged crime and what other acts are merely used for propensity demonstrations. This court resolved that problem. Please go ahead. I'm sorry. I didn't hear. Oh, what other acts are merely used for propensity demonstrations? This court resolved that problem in 2010. In United States v. Green, this court carefully analyzed all of the other tests that other courts use for delineating intrinsic evidence from other act evidence. And this court held that other act evidence, I'm sorry, intrinsic evidence is limited to those two narrow categories in Green. And make no mistake about it, a ruling for the government today, eviscerates Green's holding and it emboldens the government to present propensity evidence under the guise of I'm going to ask you a foundational question. The fault line here, one of the fault lines in this case seems to be intrinsic evidence or not, right? That's a big fault line. But that kind of presupposes that we're already in the other acts category. And it struck me that all we have here is a statement, not an act. Now, some statements can be acts. An offer on a contract, acceptance on a contract, joining a conspiracy. I think many courts refer to these as verbal acts. But other than that, statements are not acts. And so if a statement is not an act, then we aren't even into 404B space, which only governs other acts. What do you say to that? I respectfully disagree with that, Your Honor. And the reason why I disagree with that is that if this government will admit a defendant's statement under the rubric of 404B, then it must also be the case that this court can hold that it is improper to admit that statement under the rubric of 404B. The question doesn't suggest that it's admissible, just whether or not it should be considered, which I misunderstand. Whether that would properly be considered under 404B does not mean it's necessarily admissible under 404B. Because whether or not it should be considered under 404B, as opposed to being considered as something that's intrinsic to the act. Does that make any sense? You look at me as though I'm totally puzzled. Maybe I just puzzled you, I don't know. No, no, Your Honor. I think that if this court has applied 404B in allowing the government to present a defendant's statement under the rubric of 404B, so I think it must also be the case that it is possible that a defendant's statement should not come in under rule 404B. I don't even think they're arguing 404B. I don't think, and your point will correct me if I'm wrong, they're not really pressing 404B here. They're pressing it as something that's intrinsic to the action. That is their position. That is their argument. But when we analyze what he is saying, he's clearly talking about a different incident, a different plan, a different triggering event, a different means of commission, a lawsuit that will follow. He's laying out this idea, and the government is saying that's all the same thing as what happened on that day. As I understand Judge Phipps's question, though, he's saying, all right, putting aside an offer and acceptance, putting aside a conspiracy, is a statement an act? Yes, Your Honor. Yes, I believe it is. I mean, in United States v. Johnson, that's a case that this court analyzed a defendant's statement where he said, I was involved in other robberies. I didn't, you know, do this one because it's not the way they usually do them. This court admitted that under 404B's rubric. I mean, this is the exact same thing. This is a defendant's statement where he's saying, I have this idea about what to do when they say I have to go to the COVID quarantine. So, in essence, what you're saying is in Johnson, there was a statement about an act. But in this case, it's a statement about an idea, right? A notion. Is a notion the same thing as an idea for the purposes of 404B? He says, I have this idea. I have this notion. I have this plan, right? At the time, he hadn't acted on it yet. And what we're looking at is action. In Johnson, the statement was evidence of act. So, it wasn't an act in itself, but it was evidence of act. Here, we have a statement that's not an act in itself, and it's not evidence of any action other than a notion or an idea. How is that qualified as an act unless every synapse in the brain, therefore, qualifies as an act from some sort of biochemistry perspective? Well, Your Honor, I would point out in Johnson, there was no other evidence of these robberies that he said that he referred to, that the defendant referred to. And there was no other evidence of that. It was merely his statement. And I think making a statement is the same as an act. The government has been saying- Well, a statement about an act might be evidence of the act for purposes of other act. That's a way of proving other acts. But this statement isn't proving any other act. It's just proving an idea. And I guess what I'm saying is, is an idea, a plan that's not shared with anyone else through conspiracy or agreement or something like this to join in on it, is that an act? Well, Your Honor, I think that this puts me in the difficult position of having to argue that he's trying to make a conspiracy with his sister in this phone call when I'm- No, no, I'm not putting that. I'm saying if he was, then it might be a verbal act. But if he's not, then how is it either evidence of an act or an act? So if I'm understanding, Your Honor, though, if his sister says, I agree you should do that, then all of a sudden it becomes- If she says, I mean, I don't even think that we could interpret what he says is an offer for her to join in a conspiracy. In the hearsay context, I think we would call this a statement of present intention, right? Not an act, a statement of present intention. And so it would be strange if all of a sudden statements of present intention could then be deemed acts. Well, if I could just go back to Your Honor's point at the beginning that statements about a conspiracy formulating an agreement, Your Honor said that that would be another act. And right here, the only reason we don't have another act is because a sister declined. I don't think that that's the test that should be applied here, Your Honor. But do you construe his statement as an offer or an attempt to enter an invitation to enter a conspiracy? Because the only way it would qualify as a verbal act, if it was one of those sorts of things, not just I told you what my plan was. Do you think it's a good idea? I'd just like to have a conversation about it. I just, I have a hard time understanding why if she had been receptive to the idea, it would become another act. Whereas she is not as receptive to the idea, it's outside the heartland of analysis under intrinsicness and 404B. I think that can't be the test. But if I could get to Your Honor's other point that statements are present sense of mind, I think that the problem is that this is circumstantial evidence of state of mind about something else. That's why there are inferential leaps necessary right here. And I mean, the government pretty much concedes that in the pretrial argument about the statement. The government says, he says he's going to do it a different day. He just decides not to wait. He does it today. Well, the decides not to wait, that requires a leap of logic that requires an inference. And this court's holdings require that chain of logical inferences include a propensity free link. Decides not to wait is based on the government's assumption that he's got a propensity problem here. They've never articulated it. They've never said why he doesn't decide, why he decides not to wait. And that's the key. That is the real problem here. You're really in the 404B. You're not suggesting it's admissible under 404B. But if it is to be considered at all that it fits under 404B, that's that's the context of your argument right now. I think that it goes to both, Judge McKee, because the fact that an inference, a leap of logic is required to say he says it about one thing, but it actually means what he's thinking about this thing. That is an inferential step right there. And that's what makes this first other. It is an other act. It is a thought, an idea about doing something else that the government then uses to try and prove what's charged. So because there's that inferential step of this is circumstantial state of mind about what he will do on May 1st, but the government uses it to prove what he does on May 9th because that inferential step is required. That's why it is other. And then moving into the 404B analysis will articulate your chain. And the government does articulate he decided not to wait. But that has a silent propensity inference. They don't say why. So let me let me ask you this question. If a person is traveling to the airport and they tell everyone, I'm getting on a flight to Salt Lake. Right. And then they disappear. And there's also a search for abductors and a search for everything else like this. And then the government has an idea as to who the person might be. And they want to admit into evidence that the person going to the airport was going to Salt Lake. That would be admissible. Right. You wouldn't sit there and say, oh, that's that's inadmissible to prove that they were trying to catch a flight to Utah. Right. That would be perfectly admissible. I'm a little confused about the person who went missing. Are they on trial? No, they're missing. But but but the point is, their statement is it would be admissible. I think that 404B applies to the So I have it. So it's not a 404B. So that's that's just baseline admissible in your view, but not swept into 404B. Well, I think that the intrinsic analysis in green kicks in only when we're thinking, does this defendant act fall under 404B or not? Or should it be analyzed under 404B or not? So I have a difficult time understanding how the victim in an if it fails green under 404B. And I wasn't asking it necessarily as a 404B question. I was just asking it as a baseline to see if you think that that sort of statement of present intention would be admissible. Without without an objection to 404B. Well, then I think we're in a different part of the evidence code. No, no, no. We are. But but but the point is, we want to isolate what part of the code does the exclusion work? And the answer is this would otherwise be admissible. But for 404B is what I'm getting at. I just wanted to see if you thought that it would otherwise be admissible in that sense. I, I just I have a difficult time. I have a difficult time understanding because the framework that we're looking at here is is a defendant's statement, a defendant's act. So the statement or act of the victim, I don't. OK, I apologize, Your Honor, if I misapprehended the hypothetical. It's fine. This is the trend. I assume the transcript of the phone call went out with the jury. The jury saw that entire transcript. Yes, Your Honor. That's right. Yes. And if I can point to why I believe this is not a harmless error. I mean, the government cross-examined Mr. Ivory about his his about his COVID-19 beliefs. They made him seem selfish in front of the jury for wanting to stand on his constitutional rights and not be subjected to the harsh treatment in the supermax quarantine. The government also cross-examined him about wanting to become a millionaire and hoping that these guards would strike him and that he could file a lawsuit. This was extremely damaging evidence. Was he in the supermax? No, no, Your Honor, but he described the conditions to his sister as quarantine supermax, no shower, no commissary, infringed legal communications for three weeks. And he believed that's what was going to happen to him again on May 1st. Right. And so if I if I could also point out that when the government cross-examines Mr. Ivory again, the government concedes, I know you're talking about in the phone call, this is a different day, but you decided not to wait. Correct. And there again, we have the same problem of, you know, they're making this inferential step that what he says about what will happen on one occasion, that he just decides not to wait. He does it on a different occasion. And so we have this inferential step here. That's what makes this an other act and not intrinsic under Greene's categories. And that that inference, it requires the silent propensity inference about, well, why did he decide not to wait? And the government paints him out to be a money hungry prisoner who is looking for any sort of opening in order to file a lawsuit against the BOP. That's why, first, it fails under this court's test for propensity evidence. That chain of logical inferences is not met. And second, that's why it's it's not harmless error. That's why this error is so meaningful and so impactful in this particular case. The jury struggled with this evidence. They deliberated 90 minutes on two discrete incidents of assault. And this phone call, I do not think the court can be left with a sure conviction or with the high probability of the phone call did not affect the verdict. That's what the harmless error test is here, too. I would like to point out additionally that the government, my reading of this court's recent precedent in Dowdle, is that the government has waived any argument that this does apply under 404B. The government had the opportunity twice to raise the argument in front of the magistrate judge right before trial and in the intermediate appeal before the district court. Two opportunities to raise the argument. They're aware of the issue. They did not raise it in Dowdle. This court cites a Supreme Court case from 2012 saying when a party is aware of the issue twice decides not to pursue it. That is waiver. If there are no other questions, I'll reserve my time. Thank you very much. Thank you. Here for counsel for appellee. Good afternoon. May it please the court. Christian Hogsby on behalf of the United States. The panel need not concern itself with the issue of waiver or forfeiture that was being suggested at the end of the appellant's argument there because the evidence in this case was not in fact 404B evidence but was intrinsic evidence. And the trial judge correctly made that finding because the evidence consisted of a recorded conversation between Mr. Ivory and his sister in which he spoke to her about his plan to in the future assault corrections. Show me the transcript where he said he was going to assault anyone. Fair enough. Mr. McKee, Judge McKee, the quotes that I have taken from the transcript, Your Honor, were I'm going to make them restrain me. He said that he said, I'm sorry, Your Honor, you equate that with assaulting someone. Well, Your Honor, if I can offer one other quote and then I'll try and answer the question you just posed. He also said that he intended to resist. There's obviously a difference in opinion between the appellant and the appellee in terms of how to interpret that statement, Your Honor. And we would submit that that would really be an appropriate matter for a fact finder. But I think that it's a reasonable inference, Your Honor, that if an individual, an incarcerated individual, particularly one like Mr. Ivory, who had numerous institutions. No, we're really in the propensity, aren't we? No, I'm personally an individual like Mr. Ivory. Your Honor, let me try and do it more simply. Mr. Ivory is talking about inducing corrections officers to use force against him. He's talking about exercising his rights. I read the entire transcript. He's saying they're denying me my rights by subjecting me to this quarantine procedure. And you can interpret that to say, in fact, he said that I'm going to vindicate my rights. By resisting. I'm not sure if you were willing to go that far, but certainly by going limp, which looking at the video, it looks like that's what he did. He went limp, which is clearly resistance, but it's not assaulting anyone. Your Honor, I don't recall Mr. Ivory saying that he was going to go limp. He didn't say he was going to go limp. He said he was going to resist. He said he was going to resist. And I would point out, Your Honor, that under Section 111 of Title 18 of the U.S. into the early morning hours of the following day, includes as one of the ways of committing that offense, forcible resistance. Yes, Your Honor. And I think that you and I are getting to the exact same place, because what I'm going to suggest to you is when Mr. Ivory says, I'm going to make them restrain me. Mr. Ivory is in the program. That's inconsistent with going limp. Pardon me, Your Honor. That is inconsistent with going limp. You're saying it is inconsistent with that. Your Honor, unless Mr. Ivory is trying to suggest that by going limp or having a sit-in or some other peaceable form of resistance that would compel officers to use excessive force against him or put him into restraints, I don't think that's a reasonable read on what Mr. Ivory is saying. He's saying, I'm going to make those officers restrain me. He said, I'm going to resist. With the same question that I asked your opposing counsel, which is, why is this an act? These are just statements of what his plan is. He took no action at the same time he made those statements. He didn't say, I'm doing this now, or I've done this in the past. These are just statements. And it strikes me that we get to a very, very, very weird place if we take statements of present intention, not evidence of prior acts, but of present intention and start calling those acts. Judge Phipps, you're going to get no argument out of me about that. I completely agree. I don't consider, I don't think this comes into 404B at all. I see this as really no different than an individual who says, I'm going to take down Citizens Bank. I'm going to rob Citizens Bank. I'll tell you why. I'm short money. I need money. I think that security looks weak at Citizens Bank on Thursday. And he robs Citizens Bank on Wednesday. The appellant's suggesting that that all of a sudden converts that confession about the intent to rob Citizens Bank into 404B Act evidence. And the government submits that it's no such thing. It's a statement about the intention. I understand why you make the analogy. It's not true enough case, but that's a federal admission under the USA rules that would come in as an admission by the defendant. But you're saying that this can be viewed as admission because if it's an admission, then we're still not into the universe of intrinsic acts. I don't think we're in the universe of intrinsic acts, Your Honor. I believe this comes in as direct evidence. Your Honor, this is the statements Mr. Ivory made were direct evidence, both of his intent to engage in forcible resistance with corrections officers and to prove the fact that he in fact engaged in that resistance. He did exactly what he said he was going to do in the future. What he said he was going to do was to resist them putting him in COVID quarantine in order to vindicate his rights. That's your honor. I understand. I think I understand what you're saying. You're saying that. Well, Your Honor, I think what Mr. Ivory was saying was that he anticipated that he was going to be subject to a quarantine that he disagreed with prior to his anticipated release from USP Canaan in May of 2021. He indicated that he was frustrated with the Bureau of Prisons COVID protocols. He indicated that he intended to resist any movement to quarantine. He told them he was going to make officers. He told his sister he was going to make the officers restrain him. He said he was going to sue them. He said he was going to make a lot of money, said a lot of things along those lines during the roughly nine minute phone call that he had with his sister. The fact that Mr. Ivory acted on that stated intention and later even admitted that that's what he was doing when he testified does not render his statement in 404B prior act evidence. It's simply a statement that the jury can consider as to whether or not Mr. Ivory's own stated intention was carried out that same day. So if I trace back what you're saying is I understand what you're saying is what 404A allows is in essence a middle step. You admit evidence to prove character and then you hope to prove later that the person acted in conformity with that. And that that last step is the big no no. But what you're trying to do is show that this was evidence of his character. So I suppose if this evidence was offered to show that he was recalcitrant, difficult, had that sort of character and then say, oh, on this one occasion, he acted consistent with character as recalcitrant, I think we might say, as your opponent says, maybe that's propensity. But when it's when character is not part of the proof at all, we don't care what his character is. We just know that he really, really, really wanted to do this. Who cares about his character? And then he did this that time. You're saying that we don't get to that middle step and then we don't have to make that prohibited leap. Am I tracing back what you said? I mean, that's right, Your Honor. I mean, the idea of Mr. Ivory's character was nowhere put in play during this trial. It wasn't put in the transcript. The jury had this transcript. His mother doesn't want him living there. His sister doesn't want him living with him. Arguably, he's a drug dealer. He's going to bring drugs into the house. He's just a bad dude. I'm amazed that that transcript was allowed to go out with the jury. I cannot imagine, especially where credibility is an issue, and it clearly was an issue here. I cannot imagine that the judge let that transcript go to the jury. Well, Your Honor, Judge McKee, I'm happy to address that with you further if you want to explore it. I don't know that that I don't know whether that may be extending beyond really what the appellant is arguing here. I think the core, narrow issue that is being presented is not whether or not the magistrate judge, the trial judge in this case, should have sort of surgically cut off some of that, some of Mr. Ivory's statements. Well, no, he's not arguing that because he's arguing that it should never have been admitted to begin with. That whole incident is irrelevant and therefore shouldn't have come in. Well, I don't know that he's even arguing that it's irrelevant, Your Honor, because I think even Mr. Ivory's counsel would concede that it's relevant. I mean, he's speaking about his plan to resist officers. Well, he's arguing that it's not intrinsic, right, because it doesn't directly prove an element of the charge. He's arguing that it's not intrinsic, but I don't think he's arguing that it wouldn't be relevant. I mean, I think that as a matter of relevance, I think it's clearly relevant. The issue here really is a fork in the road. Is this evidence, direct evidence that can go to proving this driver's charged offenses, or is it intrinsic evidence? And should the government have provided the notice required under 404B and perhaps a limiting instruction given if one was formulated? Focusing on the intrinsic evidence side of things and walking me through the elements for this particular crime, how does this directly prove the offense? Which element does it directly prove? Your Honor, I believe it's to being like a plan, intent, whatever, under 404B2. Understood, Your Honor. Your Honor, there are four elements for the charges that were brought against Mr. Ivory. And those include that the officers in question were federal officers, that the defendant engaged in any number of kinds of conduct. I think the conduct includes resistance, impeding, obstructing. Your Honor, there are a number of different iterations of how you can commit the offense. And you also have to demonstrate knowledge and intent by the defendant. And the government submits that Mr. Ivory's statement to his sister goes to proving at least two of those elements. Certainly it goes to his knowledge and intent. It speaks directly to what Mr. Ivory intended to do. It also goes towards proving what Mr. Ivory, in fact, did, that he engaged in resistance. He said he was going to engage in resistance. Judge McKeon suggested that he may have meant that he was going to resist passively. The government submits that he meant that he was going to resist forcibly, based on what he said. And that was for the jury to consider. His statement was directly relevant to those two out of the four elements of the offense. And so that's what the government would rely on, Your Honor. Certainly it's not relevant for proving that the officers were federal officers or the other elements needed to be proven. But as to Mr. Ivory's mens rea, it's relevant. And as to his actual acts, it's relevant. So, Your Honor, again, we're not here to argue that this was 404B. And we're not arguing that 404 is a backup to the government's introduction of this evidence as direct evidence. We believe, as the trial judge and Judge Mannion, who reviewed this case on direct review, is that the magistrate judge got it exactly right. That the evidence of Mr. Ivory's statement to his sister was direct evidence because it helped directly prove it was intrinsic evidence. And even though the panel in green and Judge Smith's very detailed decision in that case, sort of reciting the history of propensity and character evidence and the way it's been narrowed over time, even though that decision really narrows in a significant way what intrinsic evidence was, we were left at the end with, you know, a sort of two-part road map. Intrinsic evidence includes evidence that directly proves the offense. And that's what I was suggesting to Judge Montgomery-Reeves, is what the government was relying on here. And it could also be prior acts that were undertaken contemporaneously and helped facilitate the offense. That's where we're left. And I think that what the Court said is... If it's prior acts contemporaneously, then you're... It's not really contemporaneous. Judge McKee, I understand what you're getting at. We're not relying on the second prong of green, the second type of intrinsic evidence that the court in green announced. We're here to argue, and what we've maintained is that it's direct evidence. It's direct evidence of the offense. And it goes to two of those elements that the government had to prove. And his statement, Mr. Ivory's statement, speak directly to those two elements. Certainly, it speaks of his knowledge and his intent. And it also speaks about what he was going to do. He says, I'm going to resist. And resistance is one of the ways that you commit this offense, when you do it forcibly. And when you say that I'm going to make officers restrain me, I'm going to resist, that's what Mr. Ivory intended. And that's why the evidence is admissible as directly proving that offense, and therefore should be considered intrinsic evidence. It never comes into a 404B analysis. And therefore, the suggestion of prejudice or prior notice or limiting instructions is really out the window, Your Honor. I think the court in green acknowledged that, that once the decision is made, that if the judge is correct that it's intrinsic evidence, all of those other concerns are set aside. And we would suggest that the appellant's argument about the sweep of 404B, although it's broad, and I think that green makes that point, Your Honor, is that 404B is somewhat broadened in green. And there is still carved out exceptions for intrinsic evidence, for the two types of intrinsic evidence that Judge Smith described in that opinion. But here, if the court were to consider this as prior act evidence that was subject to 404B analysis, that would sweep just far too broadly. It would bring in, you know, the bank robbery hypothetical that I suggested to you, you know, prior statement that I'm going to take down a bank maybe next week, maybe next month. I've been casing out Citizens Bank, and security looks weak on Thursday. But he happens to commit the robbery on Wednesday. That statement is not 404B evidence because he committed the robbery a day before he said he was going to do so. It's still evidence, direct evidence of his intent to commit that offense. And the same holds true in Mr. Ivory's case. Focusing on the intrinsic issue, if we disagree with you that this is intrinsic evidence, is the error harmless here? Your Honor, we would argue that it's harmless in this case. If you review the record, there was three days of trial testimony, and there's a suggestion in the appellant's papers that, you know, the evidence was extremely thin. And the government would urge your review of the testimony in this case. There were at least three corrections officers, by my recollection, Officer Fox, Officer Schwartzfeger, and I believe Lieutenant Paviglianti, two of whom were the intended victims of Mr. Ivory's assaults, all of whom testified that they witnessed Mr. Ivory either attempt to strike them with a fist or attempt to bite them. That's pretty powerful, direct, you know, eyewitness evidence by a victim that we believe was, you know, compelling. And again, Your Honor, Mr. Ivory himself testified in this case, I think, not to his benefit. I don't think the jury had, I think it's interesting, in the papers, appellants argue that there was an eyebrow-raising length of time. I wasn't quite sure exactly what they meant by that, whether that was a quick verdict or a lengthy deliberation. It sounds to me now, contrary to what I thought before, that the appellants are suggesting that the jury was really wrestling with this for a long period of time because of the simplicity of the offense. I think it suggests nothing other than the jury gave it appropriate consideration and due deliberation over the course of an hour and a half. There was plenty of evidence other than the phone call that went to proving Mr. Ivory's serious offenses in this case. And we would maintain that any error in this case, which we, again, do not concede, was harmless in the scope of the entire trial. Thank you very much. Thank you. I think you've got three minutes of rebuttal. Thank you, Your Honor. The government said a prisoner, certainly one like Mr. Ivory. Now, this court doesn't have to be blind to the hidden propensity argument that infects a trial. Right. It was finally articulated here in the Court of Appeals on the second level review. I mean, this is this is the most direct evidence what was argued just here today, that this was propensity evidence. This phone call was entirely presented so that jurors could hear this guy is a conniving, plotting prisoner who's trying to earn money off of your taxpayer dollars by suing the BOP for whatever happens. The government finally articulated the propensity inference that was hidden during trial in front of the magistrate and during the direct appeal. If I may address relevancy, that is the second step in Huddleston repack. The government has to identify a permitted purpose under 404 B. The second step is articulate the relevancy using a chain of logical inferences, no step of which is that propensity inference. So when the government's saying it's irrelevant, this other stuff in the call is irrelevant. No, that is part of the analysis that's that's baked into the analysis is why is mom not wanting him to come there relevant? Why is Maria's hesitation relevant? That's all baked into the call. And the defense lawyer specifically asked, can we redact some of this? The magistrate judge said no. Adopting the government stance, the magistrate judge said, no, we're not redacting the call. It all comes in. So the last piece that I would like to point out is that we're not saying statements never come in. That's not what we're saying. But there does need to be a factual analysis that occurs. This this court doesn't have to be blind to a propensity inference. We cited those cases in our reply brief at page 11. Just because the government does not say the propensity inference out loud, still, the district court needs to engage in the analysis. Are the facts close enough that this does come in? So robbing a bank on one day and then doing it the next. Maybe that's admissible. But the problem here is that he says he's going to file a non-frivolous lawsuit about COVID-19. And then the government says he's a money hungry defendant and you should use this against him. That's why the facts are different. That's why this needs to be considered under the rubric of 404B. So let me just ask a question. If premeditation were an element of this, of the account, would this evidence come in as evidence of premeditation? Well, two responses. First is that this is a general intent crime. This court has held that in U.S. versus Wheeler. That's why intoxication is not permitted as a possible defense. That's why mental health is not permitted as a possible defense. So we don't even get to the issue of what intent is. It was a hypothetical. Sorry. If premeditation were an element of the offense, would these statements be 404B prohibited under your view? Or could they come in as evidence of premeditation? I see that I'm out of time. May I answer Your Honor's question? So 404B has the precise mechanism for wanting to use statements about intent in order to prove the possible crime. So we would engage in the 404B analysis. Is this close enough? And can the government articulate a propensity-free chain of logical inferences to prove premeditation? Right. Because intent is one of those 404B purposes. And then it's about 403. I'm sorry. Right. Correct. Correct, Your Honor. So that means in any case that requires premeditation, the government, in order to prove premeditation, such as for typically first degree murder, that all has to go through a 404 and then 403 dispenser, a filter? Well, Your Honor, there needs to be a factual analysis about the statement. Are there factual differences between what crime is charged and what the person is saying in the statement? So that's one of the problems that happens here is that there are clear factual differences. The triggering event is different. Where's this lawsuit that they're talking about? He says he's going to sue. He never sues. They had a detective from BOP investigate this incident. Not a shred. Not even a BP-9. You know, not even a form articulating a grievance about this incident. So there are two facts right off the bat that are dissimilar. So a factual analysis would need to happen for the court to be able to determine intrinsic proves discharged crime or extrinsic. And under the rubric of 404B, according to your hypothetical, Your Honor. Thank you. Thank you. Thank you.